UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JEFFREY NELSON,

                               **DECISION AND ORDER**
                 Plaintiff,   **No. 6:12-CV-6292(MAT)**

   -vs-

CORRECTION OFFICER MARC McGRAIN,

                          Defendant.
_____

## I. Introduction

On March 5, 2015, a panel of the United States Court of Appeals for the Second Circuit issued an order (Dkt #19) vacating in part this Court's decision and order granting summary judgment in favor of Defendant and dismissing Plaintiff's complaint alleging various civil rights violations. See Nelson v. McGrain, No. 13-4226-pr (2d Cir. Mar. 5, 2015) (summary order).[1] In particular, the Second Circuit "vacate[d] the judgment insofar as it awarded judgment on [Plaintiff]'s First Amendment claim and remand[ed] for [this Court] to consider that claim in the first instance[,]" and it "further directed [this Court] to consider whether [Plaintiff]'s allegations, understood as retaliation claims, excused any failure to exhaust administrative remedies as to his [1] sexual assault allegations and his [2] claim that false misbehavior reports were filed against him." Dkt #19, p. 4 (citing Hemphill v. New York, 380 F.3d 680, 686-90 (2d Cir. 2004)). The Court requested that the

---

[1] The Second Circuit's order was issued as a mandate on April 9, 2015, and entered on this Court's docket (Dkt #19) on April 10, 2015.

parties submit additional briefing on the issues identified by the Second Circuit in its order, namely, (1) the merits of Plaintiff's First Amendment retaliation claim that the Second Circuit has discerned in Plaintiff's pleadings, (2) whether Plaintiff's First Amendment retaliation claim excuses, under Hemphill, 380 F.2d at 686-90,[2] Plaintiff's failure to exhaust his administrative remedies as to the following claims (a) his Eighth Amendment claim based on the alleged sexual assault upon him by Defendant, and (b) his due process claim that false misbehavior reports were filed against him. The parties submitted the additional briefing as requested.

**II. Discussion**

    **A.    First Amendment Retaliation Claim**

To state a First Amendment retaliation claim, a prisoner must demonstrate (1) protected speech or conduct, (2) adverse action by the defendant, and (3) a causal connection between the two. Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003) (citation omitted).

    **1.    Protected Speech**

Because the filing of prison grievances is a protected activity, Davis, 320 F.3d at 352-53 (citations omitted), Plaintiff meets the first prong of the test.

    **2.    Adverse Action**

"Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her

---

[2] To assist Plaintiff, who is acting pro se, the Court is sending a copy of the Hemphill decision to Plaintiff along with this order.

constitutional rights constitutes an adverse action." <u>Davis</u>, 320 F.3d at 353 (internal quotation marks omitted; citation omitted). In determining whether the retaliatory conduct is <u>de minimis</u> or sufficient to deter a similarly situated person from asserting his rights, the court "must . . . tailor[ ] [its inquiry] to the different circumstances in which retaliation claims arise, bearing in mind that prisoners may be required to tolerate more than average citizens before a retaliatory action taken against them is considered adverse." <u>Id.</u> (internal quotation marks and alterations omitted). It is well settled that "a prisoner can state a retaliation claim in the absence of actual deterrence." <u>Nelson</u>, 596 F. App'x at 38 (citing <u>Gill v. Pidlypchak</u>, 389 F.3d 379, 384 (2d Cir. 2004) ("[T]he fact that a particular plaintiff . . . responded to retaliation with greater than 'ordinary firmness' does not deprive him of a cause of action.")).

Here, Plaintiff alleges six separate instances of alleged retaliation over the course of 18 days. First, on August 29, 2011, Plaintiff alleges that Defendant stated to him, "Stop writing complaints on the staffs [sic]! Do you hear me you deaf retard! Cause I can make your stay here very miserable!" Defendant then "pull[ed] his pants down and jam[med] his buttock[s] in the feed up slot and pass[ed] gas[,]" while stating, "[I]f you don't hear that you will sure smell it!" Plaintiff's Affidavit ("Pl's Aff.") at 2. According to Plaintiff, these threats "intimidated [him] with fearful panic attack of worrying about being set up with unlawful

contraband." Id. (citing Declaration of Assistant Attorney General Hillel Deutsch, Esq. ("Deustch Decl."), Exhibit ("Ex.") B).

Second, on September 3, 2011, Defendant served him a meal that was contaminated with chewing tobacco-laden saliva.

Third, Plaintiff complains that on September 4, 2011, Defendant "threw [his] noon meal through the feed-up slot and walked away." Complaint ("Comp."), ¶ 10.

Fourth, on September 5, 2011, Defendant served him only hot dog buns and not the rest of his noon meal. Plaintiff further contends the hot dog buns he received were contaminated with *H. Pylori* bacteria. According to Plaintiff, after eating the hot dog buns, he began suffering nausea and stomachaches and was treated with an over-the-counter heartburn medication.

Fifth, on September 12, 2011, Defendant approached Plaintiff's cell and yelled, "[N]obody believe [sic] you! It's not over!" Comp., ¶ 13. Plaintiff interpreted this as a threat that Defendant was going to frame him for possession of an unlawful weapon.

On September 16, 2011, Plaintiff alleges he sustained injuries from having handcuffs applied too tightly. He also alleges that Defendant forced Plaintiff to bend over while Defendant pulled Plaintiff's underwear down and "force[d] his finger into [Plaintiff's] anal cavity while stating, 'stop resisting!'" Pl's Aff. at 5. Plaintiff states that the assault was interrupted when another correction office called out that a sergeant was coming back with a group of inmates. Id.

Finally, Plaintiff asserts that Defendant filed a false misbehavior report against him for allegedly calling him a "fucking faggot" during a facility count.

The Second Circuit has stated that the issue of whether the alleged retaliation reached the threshold of actionability under Section 1983 "is factual in nature." Davidson v. Chestnut, 193 F.3d 144, 150 (2d Cir. 1999) (citations omitted). The Court finds that the instances of alleged retaliation described above, are, at least, "'*capable* of deterring a person of ordinary firmness' from exercising the constitutional right in question[,]" Hill v. Lappin, 630 F.3d 468, 472 (6th Cir. 2010) (emphasis in original; citation omitted). See Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983) ("[T]he Eighth Amendment prohibition against cruel and unusual punishment does require that prisoners be served 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it.'") (quotation omitted); Baskerville v. Blot, 224 F. Supp.2d 723, 731 (S.D.N.Y. 2002) ("Baskerville's claim regarding the retaliatory assault sufficiently describes adverse conduct that would deter a reasonable inmate from exercising his constitutional rights.") (citing, inter alia, Rivera v. Goord, 119 F. Supp.2d 327, 339-40 (S.D.N.Y. 2000) (retaliatory assault constitutes adverse action)); Mateo v. Fischer, 682 F. Supp.2d 423, 434 (S.D.N.Y. 2010) ("It is true that some verbal threats, even if not serious enough to implicate the Eighth Amendment, can

constitute an adverse action."). At this stage of the proceeding, the Court concludes that the claimed retaliatory acts were not merely de minimis acts of harassment, which "is all that is required to reach a jury on the issue of whether the retaliatory actions could deter a person of ordinary firmness from engaging in protected conduct." Bell v. Johnson, 308 F.3d 594, 606-07 (6th Cir. 2002).

### 3. Causal Connection

Defendant has not addressed this element of a retaliation claim, relying solely on his argument that the adverse conduct alleged is de minimis.

"A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009). Records submitted by Defendant indicate that Plaintiff filed a grievance (SPT-51824-11: Denied MD Follow Up) on July 8, 2011, which was 52 days before the first instance of adverse conduct on August 29, 2011. Dkt #7-4, p. 4 of 5. Plaintiff alleges in his Complaint that he is hearing impaired and filed grievances regarding the inadequacy of medical care he received regarding his hearing problems. During the incident in which Defendant directed flatulence into his cell, Defendant called Plaintiff a "deaf retard" and told him to stop filing grievances. Then, during the remainder of the time-period in which adverse conduct was occurring, Plaintiff concomitantly was filing grievances. Under

these circumstances, viewing the evidence in the light most favorable to Plaintiff, there is a legitimate inference of a causal connection between Plaintiff's filing of grievances and the alleged retaliatory course of conduct. See Espinal, 558 F.3d at 129 ("[T]he passage of only six months between the dismissal of Espinal's lawsuit and an allegedly retaliatory beating by officers, one of whom (Surber) was a defendant in the prior lawsuit, is sufficient to support an inference of a causal connection.") (citation omitted); Reynolds-Bey v. Harris, 428 F. App'x 493, 2011 WL 1396786, at *11 (6th Cir. 2011) (unpublished opn.) (district court erroneously failed to credit, as evidence of intent, inmate's allegation that corrections officer made specific reference to protected activity when he conducted alleged retaliatory shakedown and used racial slur against inmate); Barrington v. N.Y., 806 F. Supp.2d 730, 748 (S.D.N.Y. 2011) ("Barrington alleges that he was assaulted five days after he filed a grievance and Titka made a threat that he and his 'boys' would 'get' Barrington while waving a copy of the grievance. While the threat alone cannot sustain a claim for retaliation, the same breadth that renders the threat insufficient per se makes it probative of more widespread retaliatory intent.").

Summary judgment accordingly is not warranted on Plaintiff's First Amendment claim for retaliatory treatment.

**B.     Exhaustion**

On remand, the Second Circuit instructed the Court to consider whether Plaintiff's allegations, understood as retaliation claims, excused any failure to exhaust administrative remedies as to his sexual assault allegations and his claim that false misbehavior reports were filed against him. Nelson, 596 F. App'x at 38 (citing Hemphill v. N.Y., 380 F.3d 680, 686-90 (2d Cir. 2004)). Under Hemphill, the district court must "must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." 380 F.3d at 686 (citation omitted). This is an objective test, i.e., whether a "similarly situated individual of ordinary firmness" would have found it to be "unavailable." Id. at 688 (citation omitted). Second, the district court must determine if the defendant should be estopped from presenting non-exhaustion as an affirmative defense because he prevented the plaintiff inmate from exhausting his administrative remedies by "beating him, threatening him, denying him grievance forms and writing implements, and transferring him to another correctional facility." Hemphill, 380 F.3d at 688 (citing Ziemba v. Wezner, 366 F.3d 161, 162 (2d Cir. 2004)). Third, there are certain "special circumstances" in which even though administrative remedies may have been available and the defendant may not be estopped from asserting a non-exhaustion defense, the inmate's failure to exhaust may be justified. Hemphill, 380 F.3d at 686.

Here, Plaintiff alleges, in his supplementary briefing and attached exhibits, that after the assault on September 16, 2011, and subsequent false misbehavior report, he was in a state of "anxiety of fear and depression" and had "a mental and emotional breakdown and was admitted into Elmira Correctional Facility mental health clinical where he stay as a patient for 28 days without any access to any writing material. . . ." The attached records indicate that he was admitted to the Central New York Psychiatric Center on October 12, 2011, and treated for threats of self-harm. Following his discharge, he was transferred to Clinton Correctional Facility, where he wrote a letter to the Southport grievance supervisor. He subsequently was beaten in his sleep by two corrections officers, sustaining 2 ½-inch long lacerations to his right eyelid requiring sutures, as well as contusions on his left deltoid, right upper back, lower back, left upper chest, right side of face, above right eye, left posterior arm above elbow, left upper chest, and right chest. After that, Plaintiff sliced open a vein in his arm with a facility shaving razor, which required 12 sutures and resulted in his re-admission to the Central New York Psychiatric Center.

Apart from a conclusory assertion that Plaintiff is not entitled to be excused from exhaustion, Defendant has not addressed in a meaningful manner the <u>Hemphill</u> exceptions to exhaustion, or Plaintiff's specific allegations as to why they are applicable here. Under the circumstances, the Court concludes that, at the

very least, the first two Hemphill exceptions apply. As discussed above, Plaintiff has a viable First Amendment retaliation claim, a component of which is adverse conduct by a defendant that could deter a person of ordinary firmness from exercising his rights; this is essentially the same standard for showing unavailability of remedies under Hemphill, i.e., the remedy would be deemed unavailable by a similarly situated individual of ordinary firmness. The second exception applies when the defendant's own wrongful conduct estops him from asserting non-exhaustion as a defense. Based on the allegations and documentation submitted in connection with Plaintiff's supplementary briefing, which Defendant has failed to address, the Court concludes that Defendant is equitably estopped from asserting the failure to exhaust. Accordingly, the Court reinstates Plaintiff's Eighth Amendment claims previously dismissed for failure to exhaust.

**III. Conclusion**

For the foregoing reasons, the Court declines to grant summary judgment on Plaintiff's First Amendment retaliation claim. In addition, the Court reinstates Plaintiff's Eighth Amendment claims previously dismissed based on the failure to exhaust administrative remedies.

**SO ORDERED.**

S/Michael A. Telesca

_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated:   November 24, 2015
         Rochester, New York